**Renée E. Rothauge, Bar No. 271239**
ReneeRothauge@markowitzherbold.com
**Adam M. Starr, Bar No. 246292**
AdamStarr@markowitzherbold.com
MARKOWITZ HERBOLD PC
Suite 3000, Pacwest Center
1211 SW Fifth Avenue
Portland, OR  97204-3730
Telephone: (503) 295-3085
Fax:  (503) 323-9105

Attorneys for plaintiff NPK INDUSTRIES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| NPK INDUSTRIES,<br><br>                           Plaintiff,<br><br>     v.<br><br>DENNIS HUNTER, RBD ONLINE, INC., CBD GUILD, and DOES 1-10, inclusive,<br><br>                           Defendants. | Case No. CV 3:15-cv-00811 SI<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT [FRCP 12 (b) and (f)]; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          September 18, 2015<br>Time:         9:00 a.m.<br>Ctrm:         10<br>Judge:       Hon. Susan Ilston<br><br>Complaint filed:  February 23, 2015 |

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I.     Standard of review ........................................................................................................... 2

II.    Defendants' request to strike portions of the Second Amended Complaint under Rule 12(f) must be denied. .............................................................................................. 4

    A.    Allegations regarding defendants' plan to steal confidential information using a sham buy-out offer are not immaterial. ................................................. 4

    B.    Allegations regarding defendants' "litigation plan" are not immaterial. ........... 5

    C.    Allegations about defendants' disparaging emails are not false on their face and therefore not immaterial. ............................................................................ 6

    D.    References to Mr. Jackson and Ms. Lilga's confidentiality agreements are material to NPK's claims. ................................................................................... 7

        1.    Mr. Jackson's confidentiality agreement is valid and material to NPK's claims. ............................................................................................ 7

            a.    Mr. Jackson's confidentiality obligations survived termination of his confidentiality agreement with NPK for a period of five years. ............................................................................................ 7

            b.    Defendants' inability to obtain NPK's corporate records does not prove that defendants did not obtain any of NPK's other confidential information. ................................................................. 8

        2.    Ms. Lilga's confidentiality agreement is valid and material to NPK's claims. ............................................................................................ 9

    E.    NPK has adequately pled claims for intentional interference with economic advantage. .......................................................................................................... 10

        1.    NPK Has alleged a valid claim for intentional interference with economic advantage with Yeti. .................................................................. 10

        2.    NPK has alleged a valid claim for intentional interference with economic advantage with Green Planet. ........................................................ 10

        3.    NPK alleged a valid claim for intentional interference with economic advantage with Mr. Jackson and Ms. Lilga. ................................ 11

    F.    NPK has adequately alleged a claim for trade libel ........................................ 12

    G.    NPK has adequately pled a claim for unfair competition and conversion. ..... 12

    H.    NPK has adequately pled all underlying claims that support its claims for joint liability and civil conspiracy. ................................................................... 13

CONCLUSION ....................................................................................................................... 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Kasei Pharma Corp. v. Actelion LTD.*,
   222 Cal. App. 4th 945 (2014)..................................................................................................5

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ................................................................................................................2

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ................................................................................................................2

*Blackburn v. City of Marshall*
   42 F.3d 925 (5th Cir. 1995) .....................................................................................................2

*Bureerong v. Uvawas*
   922 F. Supp. 1450 (C.D. Cal. 1996) ........................................................................................4

*Campbell v. Wells Fargo Bank*
   781 F.2d 440 (5th Cir. 1986) ...................................................................................................2

*Fantasy, Inc. v. Fogerty*
   984 F.2d 1524 (9th Cir. 1993) .................................................................................................4

*Farmers Ins. Exch. v. Fraley*
   80 Or. App. 117, 720 P2d 770 (1986) .....................................................................................9

*Fogerty v. Fantasy, Inc.*
   510 U.S. 517 (1994) ................................................................................................................4

*Hishon v. King & Spalding*
   467 U.S. 69 (1984) ..................................................................................................................2

*Johnson v. City of Shelby*
   135 S. Ct. 346 (2014) ..............................................................................................................3

*Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination*
   507 U.S. 163 (1993) ................................................................................................................2

*Lilley v. Charren*
   936 F. Supp. 708 (N.D. Cal. 1996).........................................................................................4

*Mahone v. Addicks Util. Distr. of Harris Cnty.*
   836 F.2d 921 (5th Cir. 1988) ............................................................................................2, 10

*McCombs v. McClelland*
   223 Or. 475, 354 P.2d 311 (1960)...........................................................................................7

*Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Dist. Pty, Ltd.*
   647 F.2d 200 (D.C. Cir. 1981) ................................................................................................4

*Union Pac. R.R. Co. v. Brent Mower*
   219 F.3d 1069 (9th Cir. 2000) .................................................................................................8

*Whittlestone, Inc. v. Handi-Craft Co.*
   618 F.3d 970 (9th Cir. 2010) ........................................................................................... 4

*Yamamoto v. Omiya*
   564 F.2d 1319 (9th Cir. 1977) ......................................................................................... 4

*Yeti Enterprises Inc. v. NPK, LLC,*
   No. 3:13-cv-01203-ST (D. Oregon) ................................................... 1, 3, 7, 9, 10, 11, 12

**Statutes**

OR. REV. STAT. 653.295(5) ........................................................................................................ 9

**Rules**

Fed. R. Civ. P. 12 ......................................................................................... 1, 2, 3, 4, 5, 10

Fed. R. Civ. P. 8 ......................................................................................................................... 3

**Other Authorities**

5 C. Wright & A. Miller, § 1215
   (3d ed. 2002) .................................................................................................................. 3

Advisory Committee Report of October 1955,
   reprinted in 12A C. WRIGHT, A. MILLER, M. KANE, R. MARCUS, AND A. STEINMAN,
   FEDERAL PRACTICE AND PROCEDURE (2014 ed.) ............................................................ 3

Annotation, Implied Obligation of Employee Not to Use Trade Secrets or
   Confidential Information for His Own Benefit or That of Third Persons
   After Leaving the Employment
   165 A.L.R. 1453 (1946) ................................................................................................. 8

SCHWARZER, ET AL., FEDERAL CIVIL PROCEDURE § 9:375 ...................................................... 4

**INTRODUCTION**

This case involves a carefully coordinated effort by at least 10 individuals in 3 states and 2 countries to steal plaintiff NPK Industries' highly successful products in the burgeoning horticultural business. NPK's products consisted of an entirely new category of products in the marketplace - "plant washes." Until the U.S. Environmental Protection Agency ("EPA") accepted NPK's "plant wash" registrations, the horticultural industry was left to rely on pesticides. Recognizing the massive potential of this new category of products, defendants and their co-conspirators devised a clever plan to destroy NPK and its owners, and take over that new market for themselves. With defendant Hunter's strong financial support and legal acumen, which he developed through his experiences as an ex-convict, defendants nearly succeeded. (Rothauge Decl., Ex. 3.)

Now, in an attempt to avoid responsibility for their actions, defendants rely on the self-serving allegations of their co-conspirators in an Oregon action, *Yeti Enterprises Inc. v. NPK, LLC,* USDC - Oregon Case No. 3:13-cv-01203-ST, to support their motion to dismiss. Specifically, defendants are asking this Court to judicially notice their co-conspirators' Oregon allegations as "facts," to strike any of NPK's allegations that defendants consider to be contradictory to these newly noticed "facts," and then to dismiss NPK's claims because there are no remaining allegations left to support those claims.

In support of their request, defendants make broad, speculative pronouncements about the facts alleged in the Oregon case to argue that a dismissal is proper because the two actions are "intimately related." The law does not permit a court to evaluate a complaint's sufficiency under Rule 12 of the Federal Rules of Civil Procedure based on ad hoc comparison of other "intimately related" cases. Further, NPK's alleged facts in this case state plausible claims and clearly show that there is more than a sheer possibility that defendants have acted unlawfully. And, because defendants themselves created the factual situations alleged in NPK's complaint, defendants are intimately familiar with all of NPK's claims and the grounds on which they stand. Accordingly, NPK has met the standards set forth in Rule 12 and this Court should deny defendants' motion and order defendants to answer NPK's Second Amended Complaint.

-1-
PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS
Case No. CV 3:15-cv-00811 SI

ARGUMENT

I. Standard of review.

Rule 12(b)(6) motions are disfavored in the law, and a court will rarely encounter circumstances that justify granting them. *Mahone v. Addicks Util. Dist. of Harris Cnty.*, 836 F.2d 921, 926 (5th Cir. 1988). A court may dismiss a claim only when it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations found in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A motion to dismiss should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him or her to relief. *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir. 1986). The claimant is not required to set out in detail the facts upon which the claim is based. Rather, the Rules require that the claim simply give the defendant "fair notice." *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination*, 507 U.S. 163, 168 (1993). Further, a court may not look beyond the pleadings. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The court must accept as true the allegations in the complaint, and must view the allegations in the light most favorable to the plaintiff. *Id*. The allegations in the claim need only give the defendants fair notice of the nature of the claim and the grounds on which it rests. *See Mahone*, 836 F.2d at 926. The Rules also dictate that the pleadings be liberally construed "to do substantial justice." *Id.*

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Court stated the pleading standard as follows: "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 545. And in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court referred back to that standard, stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 570). The Court in *Iqbal*, explained that "a formulaic recitation of the elements of a cause of action" in a complaint is insufficient and that, instead, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In 2014, the U.S. Supreme Court clarified its findings in *Twombly* and *Iqbal*. The Court explained that in addressing motion to dismiss claims pursuant to Federal Rule of Civil Procedure

12(b)(6), courts should not apply the strictures of *Twombly* and *Iqbal* beyond questions of the facts alleged. *See Johnson v. City of Shelby*, 135 S. Ct. 346 (2014). The plaintiffs in *Johnson* worked as police officers for the city of Shelby, Mississippi. They alleged "they were fired by the city's board of aldermen, not for deficient performance, but because they brought to light criminal activities of one of the aldermen." 135 S. Ct. at 346. Plaintiffs charged violations of their Fourteenth Amendment due process rights and sought compensatory relief from the city. *See id.* The district court entered summary judgment against the plaintiffs for failure to invoke 42 U.S.C. § 1983 in their complaint, and the United States Court of Appeals for the Fifth Circuit affirmed. *See Johnson,* 135 S. Ct. at 346.

The *Johnson* court reversed the Fifth Circuit's decision and reiterated the pleading standard provided by Federal Rule of Civil Procedure 8(a)(2), pursuant to which a plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Johnson,* 135 S. Ct. at 346. The Court explained that the federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Id.* In support of this premise, the Court cited Advisory Committee Report of October 1955, reprinted in 12A C. WRIGHT, A. MILLER, M. KANE, R. MARCUS, AND A. STEINMAN, FEDERAL PRACTICE AND PROCEDURE, at 644 (2014 ed.) and the statement therein that the Federal Rules of Civil Procedure "are designed to discourage battles over mere form of statement." *See Johnson*, 135 S. Ct. at 346-47. The Court also cited 5 C. WRIGHT & A. MILLER, § 1215, at 172 (3d ed. 2002) and the statement therein that Rule 8(a)(2) "indicates that a basic objective of the rules is to avoid civil cases turning on technicalities." *See Johnson*, 135 S. Ct. at 347.

In this case, as argued in NPK's Opposition to Defendants' Request For Judicial Notice and incorporated herein, any factual allegations contained in *Yeti Enterprises v. NPK, LLC., et al.* are not proper for judicial notice and therefore irrelevant to this court's consideration of defendants' motion to dismiss. The alleged facts contained in NPK's Second Amended Complaint meet the pleading standards set forth in Rule 12. NPK's alleged facts state claims which are plausible and show that there is more than a sheer possibility that defendants have acted unlawfully in this matter. Accordingly, defendants' motion to dismiss must be denied.

**II.     Defendants' request to strike portions of the Second Amended Complaint under Rule 12(f) must be denied.**

Under Rule 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). However, "[M]otions to strike, as a general rule, are disfavored." *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Dist. Pty, Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981). They are disfavored because they are "often used as delaying tactics, and because of the limited importance of pleadings in federal practice." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1478 (C.D. Cal. 1996) (citing SCHWARZER, ET AL., FEDERAL CIVIL PROCEDURE § 9:375) (emphasis added). "Rule 12(f) is 'neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.'" *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977). "Were [courts] to read Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading . . . [they] would be creating redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose." *Whittlestone,* 618 F.3d at 974. Accordingly, "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Lilley v. Charren*, 936 F. Supp. 708, 713 (N.D. Cal. 1996).

**A.     Allegations regarding defendants' plan to steal confidential information using a sham buy-out offer are not immaterial.**

Defendants argue that because NPK did not accept the sham buy-out plan orchestrated by defendants, NPK suffered no damage and therefore any allegations related to the buy-out plan should be stricken from the Second Amended Complaint as immaterial. Defendants support their argument with references to the Wall Street Journal being "rife" with stories of "businessmen attempting to buy into a competitor." (Defs.' Mot. to Dismiss, or in the Alternative, to Strike Pl.'s

2d Am. Compl., at 6.) While buy outs are permissible in the business world, they are not permitted through theft or other tortious and deceptive means, as is the case here. *See, e.g., Asahi Kasei Pharma Corp. v. Actelion LTD.,* 222 Cal. App. 4th 945 (2014).

More importantly, defendants' argument does not address the damages that NPK suffered as a result of defendants' failed attempts to orchestrate a sham buy-out. NPK has alleged that through the encouragement, promises of employment and other compensation, legal and financial support, including up to $250,000 for the sham buy-out, that NPK lost key employees, products, labels, customer lists, registrations and other valuable intellectual property. (*See* 2d Am. Compl. ¶¶ 12-16.) Defendants' sham buy-out tactics are a factual foundation for NPK's claims and are not immaterial.

**B.  Allegations regarding defendants' "litigation plan" are not immaterial.**

Defendants offer four reasons for their requested dismissal of allegations regarding their litigation plan to obtain NPK's confidential information. First, NPK's ability to obtain a protective order. Second, the fact that certain co-conspirators had developed and "helped shepherd" a similar plan. Third, that the plan was "apparently abandoned." And fourth, the fact that the litigation privilege would "probably" protect defendants from having to produce documents related to defendants' plan during the discovery process. (Defs.' Mot. to Dismiss, at 6-7.)

First, it is unclear how a protective order would have been an "obvious remedy" available to NPK who was unaware of defendants' actions until after the damage to NPK's business had been done. Second, defendants cite no law for the proposition that similar allegations in another action are "self-cancelling" such that the allegations in this action are considered immaterial. Third, there is no evidence in the record before this court that the plan was abandoned. And NPK never alleged that the plan was abandoned. NPK alleged that defendants "could not get NPK's business records as quickly as they had hoped." (2d Am. Compl., ¶ 16.) Fourth, unless defendants' lawyers participated with defendants or instructed defendants to engage in the actions alleged in the Second Amended Complaint, the litigation privilege would not apply.[1]

---

[1] However, the Court should reject all of these arguments because they are inappropriate matters for Rule 12 motion practice.

NPK's allegations regarding defendants' "litigation plan" as a way to obtain NPK's confidential information and gain a competitive advantage in the horticultural marketplace clearly bear a relationship to the subject matter of this lawsuit - defendants' tortious interference with NPK's employees, contracts, product lines and reputation in the market.  Accordingly, the allegations related to defendants' "litigation plan" are not immaterial.

### C. Allegations about defendants' disparaging emails are not false on their face and therefore not immaterial.

As part of Mr. Hunter's plan to steal NPK's business, he caused at least one mass email to be sent to potential customers accusing NPK's product of causing mold.  (Rothauge Decl., Exs. 1 & 2.)  Mr. Hunter's Declaration in support of defendants' request to strike evidence about any emails disparaging NPK's products is flawed in two ways.  First, his declaration does not state that no disparaging emails were sent by anyone else on behalf of himself or defendants.  And second, there is no date on Mr. Hunter's email exhibit to indicate when or to whom it was sent.  (*See* Hunter Decl. in Supp. of Mot. to Dismiss, Ex. A.)  Nonetheless, defendants argue that because this single exhibit "mentions nothing about mold," NPK's allegations are false on their face and thus immaterial. (Defs.' Mot. to Dismiss, at 7.)

Defendants' assertion that the only email defendants ever sent regarding NPK's products was the single exhibit attached to Mr. Hunter's declaration is false. NPK was forwarded an email sent on November 20, 2013, on behalf of defendants by Amanda Bowman, to members of the horticultural marketplace stating that NPK's product formula was "causing bottles to mold."  (Rothauge Decl., Ex. 1.)  Two days later, on a telephone call recorded by the Oregon Department of Corrections, defendant Hunter told Nicholas Jackson that he just sent out a "big ol mass email" related to the launching of his new line of plant washes. (*Id.*, Ex. 2.)  NPK's allegations related to the Hunter mold email and the recorded statements of Hunter admitting he caused a disparaging email to be sent when he launched his "new" product demonstrates that NPK has viable claims against defendants. The allegations about a disparaging email are not immaterial.  In fact, Mr. Hunter has lied to this Court by submitting a declaration suggesting he had no involvement with the disparaging email.

**D.   References to Mr. Jackson and Ms. Lilga's confidentiality agreements are material to NPK's claims.**

The confidentiality agreements between NPK and Mr. Jackson and Ms. Lilga are not part of the pleadings in this case. Defendants therefore appear to be attempting to convert their motion to dismiss into a motion for summary judgment. Should the court consider defendants' request as a motion for summary judgement, NPK requests leave to file addition briefing on the matter.

**1.   Mr. Jackson's confidentiality agreement is valid and material to NPK's claims.**

Defendants argue that (1) because Mr. Jackson's non-disclosure agreement with NPK that was produced in *Yeti Enterprises Inc. v. NPK, LLC* presumably expired on April 11, 2013 and (2) defendants could not get NPK's business records prior to June 2013, that defendants did not obtain any of NPK's confidential information prior to June, 2013. As a result, defendants ask this Court to disregard any references to NPK's confidentiality agreement with Mr. Jackson. (Defs.' Mot. to Dismiss, at 8.) The Court should deny the request.

**a.   Mr. Jackson's confidentiality obligations survived termination of his confidentiality agreement with NPK for a period of five years.**

Defendants' argument fails to acknowledge that the terms of Mr. Jackson's confidentiality agreement state that his "obligations under the Agreement shall survive termination of the Agreement between the parties and shall be binding . . . for a period of five (5) years. . . . ." (See Defs.' Ans. & Affirmative Defenses to Pls.' 3d Am. Compl. & Counters. in *Yeti Enterprises Inc. v. NPK, LLC,* Ex. 5.)

Further, Mr. Jackson was an officer and employee of NPK, an Oregon Limited Liability Company. (2d Am. Compl., ¶ 11.) Oregon law imposes a legal duty on every employee to protect an employer's trade secrets and other confidential information, an obligation that continues beyond the term of employment. In *McCombs v. McClelland*, 223 Or. 475, 354 P.2d 311 (1960), the Oregon Supreme Court held that ex-employees are under "an implied obligation . . . not to use [their former employers'] trade secrets or confidential information for [their] own benefit or that of third persons. . . . ." *Id*. at 483 (noting that "[t]he law is well settled" on this issue (quoting Annotation,

Implied Obligation of Employee Not to Use Trade Secrets or Confidential Information for His Own Benefit or That of Third Persons After Leaving the Employment, 165 A.L.R. 1453, 1454 (1946)) (internal quotation marks omitted)).  Thus, Oregon law recognizes an implied duty of confidentiality regardless of the status of Mr. Jackson's confidentiality agreement.  *See. e.g.*, *Union Pac. R.R. Co. v. Brent Mower,* 219 F.3d 1069 (9th Cir. 2000) (finding that an employee's implied duty of confidentiality continues beyond the terms of employment and beyond the terms of an express agreement).

Conversations between Mr. Jackson and various parties, including Mr. Hunter, show that Mr. Jackson and Ms. Lilga gave NPK's confidential and proprietary information to defendants between at least January and November, 2013, including but not limited to: (1) detailed commercial information regarding NPK's contractual relationships; (2) "top secret" information regarding plant wash registration processes with the EPA; (3) customer lists and contact information; (4) international distribution channels, and; (5) marketing strategies and training procedures related to the use of plant washes.  (Rothauge Decl., Ex. 2.)  Because Mr. Jackson's confidentiality obligations survived for a period of 5 years (April 2016) and Oregon law recognizes that the duty of confidentiality continues beyond the terms of an express agreement, Mr. Jackson's confidentiality agreement with NPK is material to NPK's claims.

    **b.**  **Defendants' inability to obtain NPK's corporate records does not prove that defendants did not obtain any of NPK's other confidential information.**

A company's confidential information is not limited to its corporate or what defendants characterize as "business records."  Confidential information may include a company's customer lists, manufacturing processes and procedures, vendors, marketing strategies, contractual relationships, research and development findings, business models, recruiting strategies, product formulas and other information that has commercial value and is not generally known or readily available to the public.

While defendants were unsuccessful at obtaining NPK's business records, as outlined above, defendants did receive a vast amount of NPK's confidential from Mr. Jackson and Ms. Lilga between January and November of 2013.  (Rothauge Decl., Ex. 2.)  Defendants' receipt of NPK's

confidential information and the existence of Mr. Jackson's confidentiality agreement with NPK are material to NPK's claims. Defendants' request to strike any references to Mr. Jackson's confidentiality agreement should be denied.

### 2. Ms. Lilga's confidentiality agreement is valid and material to NPK's claims.

Defendants cite no law to support their argument that any references to Ms. Lilga's confidentiality agreement should be stricken because the agreement is "too broad" and thus invalid. (Defs.' Mot. to Dismiss, at 8-9.) Instead, defendants argue that commercially valuable information in NPK's business could include anything from the "formula for Coca Cola to the office coffee blend." Ms. Lilga's confidentiality agreement prevented her from disclosing commercially valuable information related NPK's business. (*See* Defs.' Ans. & Affirmative Defenses to Pls.' 3d Am. Compl. & Counters. in *Yeti Enterprises, Inc. v. NPK, LLC,* Ex. 6.) NPK is in the horticultural business, not the cola or coffee business. The confidentiality agreement therefore protects commercially valuable information related to the horticultural business. Further, the non-disclosure provisions of Ms. Lilga's agreement survive the term of the agreement. *Id.*

ORS 653.295(5) permits an employer to protect its trade secrets and other proprietary information. OR. REV. STAT. 653.295(5). A protectable interest exists where an employee has access to confidential information that could be detrimental to the employer. *See, e.g., Farmers Ins. Exch. v. Fraley*, 80 Or. App. 117, 119, 720 P2d 770 (1986). As outlined above, Ms. Lilga had access to information that could be detrimental to NPK if disclosed including (1) detailed commercial information regarding NPK's contractual relationships; (2) "top secret" information regarding NPK's plant wash registration processes with the EPA; (3) NPK's customer lists and contact information; (4) NPK's international distribution channels, and; (5) NPK's marketing strategies and training procedures related to the use of plant washes. (Rothauge Decl., Ex. 2.)

Because Ms. Lilga's confidentiality agreement with NPK is valid, Defendants' request to strike any reference to Ms. Lilga's confidentiality agreement should be denied.

**E.     NPK has adequately pled claims for intentional interference with economic advantage.**

As articulated in NPK's Opposition to Defendants' Request For Judicial Notice and incorporated herein, the disputed facts in *Yeti Enterprises, Inc. v. NPK, LLC* may not be used to dismiss the allegations in this action. NPK's allegations must be viewed in a light most favorable to NPK and the claim need only give the defendants fair notice of the nature of the claim and the grounds on which it rests. *See Mahone*, 836 F.2d at 926.

**1.     NPK Has alleged a valid claim for intentional interference with economic advantage with Yeti.**

Defendants argue that based on the Oregon litigation, "anything Mr. Hunter might allegedly have done pales in comparison to what NPK did itself" so the claim should be dismissed. (Defs.' Mot. to Dismiss, at 10.) In support of this argument, defendants rely on disputed facts from the pleadings in *Yeti Enterprises, Inc. v. NPK, LLC*. Defendants have not adequately pled the disruption of its relationship with Yeti because that relationship was already in jeopardy. (*Id.* at 9.)

Allegations in the Oregon litigation are irrelevant and comparative fault cannot be used to create a straw man argument for purposes of dismissing claims on a Rule 12 motion. NPK's allegations give more than fair notice to defendants regarding the nature of NPK's intentional interference claim and the grounds on which it rests. (See 2d Am. Compl., ¶¶ 1-33.) Defendants' request to dismiss NPK's intentional interference with economic advantage with Yeti should be denied.

**2.     NPK has alleged a valid claim for intentional interference with economic advantage with Green Planet.**

Based on the Oregon litigation, defendants argue that because other parties sent disparaging emails and negative reports to the governments defendants cannot be responsible for engaging in the same conduct. (Defs.' Mot. to Dismiss, at 10.) Defendants also argue that NPK's claims fail because defendants never sent any disparaging emails; NPK does not allege what disparaging remarks were made by defendants; and that the theft of NPK's property is "not relevant" to a claim of intentional interference. (*Id.*)

Again, allegations in the Oregon litigation are irrelevant and not a basis for dismissing a claim. As already shown by NPK, defendants did send disparaging emails. (Rothauge Decl., Ex. 1.) Further, NPK is not required to plead the specifics of defendants' disparaging remarks. Finally, when someone is involved with the theft of its competitor's confidential and proprietary information and intends to use that information to circumvent and destroy its competitor's existing contractual relationships, it is relevant to "the intentional acts on behalf of the defendant designed to disrupt the relationship" element of an intentional interference claim.

NPK's allegations give more than fair notice to defendants regarding the nature of NPK's intentional interference claim with Green Planet and the grounds on which it rests. (See 2d Am. Compl., ¶¶ 1-40.) Defendants' request to dismiss NPK's intentional interference with economic advantage with Green Planet should be denied.

   **3. NPK alleged a valid claim for intentional interference with economic advantage with Mr. Jackson and Ms. Lilga.**

Similar to their argument regarding interference with Yeti, defendants argue that because Mr. Jackson and Ms. Lilga had already hatched a plan to steal NPK's business, whatever Mr. Hunter later did was irrelevant. (Defs.' Mot. to Dismiss, at 11.) Defendants also argue that because Mr. Jackson and Ms. Lilga's confidentiality agreements are invalid, there could not have been any interference from defendants. (*Id*.)

Again, allegations in the Oregon litigation are irrelevant and not a basis for dismissing a claim. Further, as outlined above, NPK, Mr. Jackson and Ms. Lilga's confidentiality agreements are valid. Finally, in a telephone call between Mr. Hunter, Mr. Jackson and Ms. Lilga on January 3, 2013, it is clear that Mr. Jackson and Ms. Lilga severed their relations with NPK, in large part, based on promises of significant financial backing from defendants. (Rothauge Decl., Ex. 2.)

NPK's allegations give more than fair notice to defendants regarding the nature of NPK's intentional interference claims with Mr. Jackson and Ms. Lilga and the grounds on which they rest. (See 2d Am. Compl., ¶¶ 1-47.) Defendants' request to dismiss NPK's intentional interference with economic advantage with Mr. Jackson and Ms. Lilga should be denied.

**F.     NPK has adequately alleged a claim for trade libel**

Defendants seek to dismiss NPK's trade libel claim because NPK's allegations were not specific enough about how and when the disparaging statements were made. (Defs.' Mot. to Dismiss, at 11.) Relying on California Civil Jury Instructions, defendants reason that without such information, the element that "defendant knew or should have recognized that someone else might act in reliance on the statement causing plaintiff financial loss" is not met. (*Id.*) Which, defendants reason "makes sense because what one says about a business rival to friends at a social gathering might have entirely different consequences than what ones declares at a trade show." (*Id.*) Or, for that matter, in a mass email targeted at your business rival's customers. (Rothauge Decl., Ex. 1.) Defendants' disparaging email of November 20, 2013 regarding NPK's products causing mold speaks for itself. The email contains how and when the disparaging remarks were made and to whom they were made. (*Id.*) NPK has pled all elements of a trade libel claim in detail and will find more detail during the discovery process. Defendants' request to dismiss NPK's trade libel claim should be denied.

**G.     NPK has adequately pled a claim for unfair competition and conversion.**

Once again, defendants impermissibly rely on the pleadings in *Yeti Enterprises, Inc. v. NPK, LLC* for the proposition that NPK's unfair competition claim against defendants must be dismissed because certain allegations are contradicted. (Defs.' Mot. to Dismiss, at 12.) Defendants argue that NPK did not demand the return of its stolen property. (*Id.*) This is because, at the time, NPK did not know what defendants had done. By the time NPK received the recorded conversations from the Oregon Department of Corrections between Mr. Jackson and Mr. Hunter, it was too late. Defendants had already used all of NPK's stolen information to launch their new products. (Rothauge Decl., Exs. 1 & 2, ¶ 3(a).) As such, any demand on defendants would have been futile. Nonetheless, NPK's allegations give fair notice to defendants about the nature of NPK's unfair competition and conversion claims. (2d Am. Compl., ¶¶ 1-68.) Defendants' request to dismiss NPK's unfair competition and conversion should be denied.

**H.     NPK has adequately pled all underlying claims that support its claims for joint liability and civil conspiracy.**

As fully outlined above, NPK has adequately pled all underlying claims in this action. Accordingly, NPK has also adequately pled claims for joint liability and civil liability and defendants' request to dismiss these claims should be denied.

## CONCLUSION

NPK's claims fully and properly set forth actionable claims for relief.  NPK's allegations give defendants fair notice regarding the nature of NPK's claims and the grounds on which they rest. Based on the pleadings alleged in this complaint, NPK can clearly prove a multitude of facts in support of its claims and defendants cannot rely on self-serving allegations from their co-conspirators in Oregon to ignore those facts.  Accordingly, defendants' motion should be denied and defendants should be ordered to answer NPK's complaint.

DATED this 14th day of August, 2015.

MARKOWITZ HERBOLD PC


By:   */s/ Renée E. Rothauge*
      Renée E. Rothauge, Bar No. 271239
      Adam M. Starr, Bar No. 246292
      Attorneys for Plaintiff NPK INDUSTRIES

470809