<div style="text-align:left; writing-mode: vertical">United States District Court<br>Northern District of California</div>

1

2

3

4              UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6

7                                          Case No.  15-cv-00811-SI

8    NPK INDUSTRIES,
                                           **ORDER DENYING DEFENDANTS'**
9              Plaintiff,                   **MOTION TO STRIKE PLAINTIFF'S**
                                           **SECOND AMENDED COMPLAINT,**
10        v.                                **AND DENYING IN PART AND**
                                           **GRANTING IN PART DEFENDANTS'**
11   DENNIS HUNTER, et al.,                 **MOTION TO DISMISS**

12             Defendants.                  Re: Dkt. No. 40

13

14        Now before the Court is defendants' motion to dismiss, or in the alternative, to strike

15   plaintiff's Second Amended Complaint.  Dkt. No. 40.  Pursuant to Civil Local Rule 7-1(b), the

16   Court finds this matter appropriate for resolution without oral argument and VACATES the

17   hearing set for September 18, 2015.  Having carefully considered the papers submitted, the Court

18   hereby rules as follows.

19

20                          **BACKGROUND**

21        Plaintiff NPK Industries, an Oregon Limited Liability Company, manufactures, markets,

22   distributes, and sells plant washes and other horticultural products.  Second Amend. Compl.

23   ("SAC") ¶¶ 1, 8.  NPK has brought suit against defendants Dennis Hunter, RBD Online, Inc.

24   ("RBD"), and CBD Guild ("CBD") for: (1) intentional interference with prospective economic

25   advantage; (2) common law trade libel; (3) unfair competition; (4) conversion; (5) civil aiding and

26   abetting; and (6) civil conspiracy.  *See generally* SAC.  Hunter is an individual residing in

27   California; RBD and CBD are companies allegedly owned or controlled by Hunter.  *Id.* ¶¶ 2-4.

28        NPK alleges that the defendants, at the direction of Hunter, devised plans to steal valuable

United States District Court
Northern District of California

intellectual property and other proprietary information from NPK in order to start a competing plant wash business with "disgruntled" NPK employees, Nicholas Jackson and Jessica Lilga. SAC ¶¶ 13-14.  NPK asserts that Hunter relayed a sham offer to purchase Jackson's NPK shares, in hopes that NPK would buy out Jackson, freeing him from his non-compete agreement with NPK.  *Id.* ¶¶ 14-15.  Furthermore, plaintiff alleges that Hunter agreed to provide Jackson and Lilga with legal and financial assistance in return for relaying NPK's top secret, valuable commercial information.  *Id.* ¶ 16.  When this plan failed, Hunter allegedly orchestrated a "litigation plan" to acquire NPK's business records and other confidential information through discovery.  *Id.* ¶ 17. Hunter and RBD also allegedly made false reports against NPK to various law enforcement agencies, in order to "interrupt[] and debilitat[e] NPK's operations so that Hunter and RBD could steal NPK's business."  *Id.* ¶ 20.  Plaintiff also alleges that Hunter contacted NPK's business partners and customers to disparage NPK products and began an email campaign stating that NPK products contained mold.  *Id.* ¶¶ 21-23.

In addition to the proceeding before this Court, NPK is currently a named defendant in another case before the United States District Court for the District of Oregon, *Yeti Enters. Inc. v. NPK, LLC*, Case No. 3:13-cv-01203-ST.  According to defendants, that case involves claims for "trademark infringement, breach of contract, fraud, and other causes of action brought against NPK," based on similar factual circumstances surrounding NPK's loss of business.  *See* Joint Case Mgmt. Conf. Stmnt. at 4.

On May 20, 2015, plaintiff filed its Second Amended Complaint, having received leave to do so from this Court.  Dkt. Nos. 24, 25.  On July 31, 2015, defendants filed a motion to dismiss, or in the alternative, motion to strike the Second Amended Complaint.  Dkt. No. 40.  Defendants allege that the complaint "contains redundant, immaterial, impertinent, or scandalous matter" that must be stricken, and that once the Court disregards these allegations, plaintiff has failed to state a claim for which relief can be granted.  Motion at 1-2.  Defendants have also filed a request for judicial notice, which plaintiff has opposed.  Dkt Nos. 41, 45-1.

# DISCUSSION

## I.    Motion to Strike

Defendants argue that several of plaintiff's factual allegations should be stricken as immaterial because they "have no bearing on NPK's claims or . . . are false on their face." Motion at 5. The Court finds that defendants have not met the legal standard for a motion to strike and denies the motion in its entirety.

### A.    Legal Standard under Rule 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "'Immaterial' means that the matter has no bearing on the controversy before the court. [Citations.] If there is *any doubt* as to whether the allegations might be an issue in the action, courts will deny the motion." *In re 2TheMart.com, Inc. Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). Moreover, motions to strike are generally disfavored. *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).

### B.    Allegations Regarding Defendants' Plan to Buy Out Jackson

Defendants assert that the allegations regarding Hunter and RBD's attempt to buy out Jackson should be stricken as immaterial because "[t]here was no injury . . . [and] more importantly, nothing came of Mr. Hunter and RBD's alleged attempt." Motion at 6. NPK has alleged in its complaint it they has lost valuable information to defendants, including NPK's "intellectual property and other valuable confidential and proprietary trade information," which resulted in NPK losing "key employees, products, labels, customer lists, registrations and other valuable intellectual property." SAC ¶ 16; Plaintiff's Response at 5. Plaintiff argues that defendants' "buy-out tactics are a factual foundation for NPK's claims and are not immaterial." Plaintiff's Response at 5. If taken as true, these allegations are material to plaintiff's claims in the present suit, including plaintiff's claims for intentional interference with prospective economic advantage and conversion. Therefore, the Court agrees with plaintiff that the allegations regarding

1    the buy-out plan should not be stricken.

2

3    **C.    Allegations Regarding the "Litigation Plan"**

4    Defendants argue that the allegations regarding a litigation strategy intended "to obtain

5    NPK's confidential information by way of discovery" should be stricken as immaterial.  *See*

6    Motion at 6.  Defendants argue that striking the allegations is appropriate because: (1) NPK made

7    contradictory allegations in *Yeti;* (2) NPK could have sought a protective order; (3) the litigation

8    plan was abandoned and therefore resulted in no harm; and (4) "any request for documents in such

9    litigation would probably be protected by the litigation privilege."  Motion at 6.

10   Defendants' argument fails for numerous reasons.  First, as discussed further below, the

11   Court declines to take judicial notice of the factual allegations made in the *Yeti* pleadings, while

12   the factual allegations pled in the Second Amended Complaint in this case must be taken as true

13   for the purposes of this motion.  Second, defendants do not cite to any authority for the proposition

14   that availability of an "obvious remedy" renders an allegation immaterial.  Third, plaintiff NPK

15   does not allege in its complaint that defendants abandoned the litigation plan.  Fourth, the fact that

16   the litigation privilege may have protected plaintiff against defendants' discovery efforts has no

17   bearing on the materiality of plaintiff's allegations.  In addition, the Court agrees with plaintiff that

18   these arguments are inappropriate at the pleading stage of litigation.  *See* Plaintiff's Response at 5

19   n.1.

20

21   **D.    Allegations Regarding Disparaging Emails**

22   Defendants argue that allegations about disparaging emails should be stricken as

23   immaterial because they are false on their face.  Motion at 7.  The Court concludes that

24   defendants' motion presents factual questions that cannot be resolved at this stage of the litigation.

25   Plaintiff alleges that Hunter began an email campaign stating that NPK products contained mold.

26   SAC ¶ 23; Plaintiff's Response at 6.  Defendants assert that Hunter sent only one "mass e-mail"

27   regarding NPK and that it was not disparaging.  *See* Hunter Decl. ¶ 2; Motion at 7.  A motion to

28   strike is not the appropriate vehicle for resolving such a factual dispute, and defendants have failed

United States District Court
Northern District of California

4

to meet the legal standard on a motion to strike.[1]  *See* Fed. R. Civ. P. 12(f).

### E.    References to the Confidentiality Agreements

Defendants move to strike as immaterial all references to NPK's employment and confidentiality agreements because they were not attached to the complaint and because they are allegedly unenforceable on their face.  Motion at 7.  Again, the Court finds that such factual disputes are not properly resolved in a motion to strike.  Further, although the Court may consider "documents attached to the complaint [and] documents incorporated by reference in the complaint" at the pleading stage, a plaintiff need not attach proof in support of assertions made in the complaint.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Accordingly, the motion to strike is denied.

## II.    Motion to Dismiss

Defendants next argue that, after "disregarding the immaterial allegations of the Second Amended Complaint, the remaining allegations for each of NPK's six claims" must be dismissed for failure to state a claim under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Motion at 9.

At the outset, the Court notes that it has diversity jurisdiction in this case.  The parties here have not provided the Court with arguments regarding choice of law.  Both parties appear to rely on California law, with the exception of plaintiff's citations to Oregon law with regard to NPK's confidentiality agreements with its employees.  *See* Motion at 9, 13; Plaintiff's Response at 5, 7-9. The parties have not briefed the Court as to which state law applies; for the purposes of this motion, the Court will apply California law as the law of the forum state.[2]

---

[1] Defendants may renew their argument on a fuller factual record in a motion for summary judgment.

[2] Although the Court applies California law for the purposes of this motion, it makes no determination at this time as to the applicable choice of law with regard to the confidentiality agreements.

5

United States District Court
Northern District of California

United States District Court
Northern District of California

### A.      Legal Standard under Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009).  The Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).  As a general rule, the Court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings. *Id.* at 688-89.

### B.      Intentional Interference with Prospective Economic Advantage and Unfair Competition

NPK brings three counts of intentional interference with prospective economic advantage and one count of unfair competition. *See generally* SAC.  NPK alleges that defendants interfered with the contractual relationship between NPK and its business partners, Yeti and Green Planet, and between NPK and its employees.  SAC ¶¶ 27-47.  NPK also claims that Hunter and RBD solicited NPK employees to steal NPK's proprietary information and used such information to unfairly compete against NPK.  SAC ¶¶ 55-57.  Defendants move to dismiss on the grounds that NPK made contradictory allegations in the pleadings of the *Yeti* case. *See* Motion at 9-11.

As discussed below, the Court cannot take judicial notice of disputed facts from other proceedings or factual findings from another case.  *See* § III, *infra*; *Lee*, 250 F.3d at 689.  The Court must assume all allegations in the complaint in this case are true.  *See Usher*, 828 F.2d at 561.  That defendants dispute the underlying facts does not mean that plaintiff has failed to state a

claim under Rule 12(b)(6).[3]  Accordingly, defendants' motion to dismiss is denied as to the claims of intentional interference with prospective economic advantage counts and unfair competition.

### C.      Conversion

Plaintiff alleges that defendants used, kept, and refused to return NPK's property.  SAC ¶ 64.  This includes its records, customer files, customer contact information, customer lists, corporate minutes, an advertisement, distribution contracts, and other business records.  *Id.* Defendants argue that the claim for conversion should be dismissed because plaintiff has failed to make demand upon the defendants for the converted property.  Motion at 12 n.16.  Plaintiff argues that demand would have been futile because it was unaware of the stolen property until after the harm was done.  Plaintiff's Response at 12.

The Court agrees that plaintiffs were not required to plead that they made a demand.  *See Weinberg v. Dayton Storage Co.*, 50 Cal. App. 2d 750, 757 (1942) ("[T]here is no necessity for a demand where . . . a demand would be futile."); *see also* 14A Cal. Jur. 3d, Conversions, § 56 (2015) ("[N]o demand is required where the conversion charged is a wrongful sale or use of the property by the defendant.").  Insofar as defendants assert that plaintiff's claim for conversion must be dismissed because the allegations are contradictory to the pleadings in *Yeti*, the Court rejects this argument for the same reasons as above.  Defendants' motion to dismiss the claim for conversion is denied.

### D.      Trade Libel

Defendants move to dismiss plaintiff's trade libel claims, stating that plaintiff has failed to allege "how, when, and to whom the alleged disparaging statements were made."  Motion at 12.

To successfully state a claim for trade libel or defamation, a plaintiff must allege: (1) who made the statements, (2) to whom the statements were made, (3) the time and place of publication,

---

[3] To the extent that defendants' submission of matters outside the pleadings is an attempt to convert their motion to dismiss into a motion for summary judgment, the Court exercises its power to exclude such evidence and declines to treat the motion as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(d).

1    and (4) the substance of the statements.  *See First Adv. Background Servs. Corp. v. Private Eyes,*

2    *Inc.*, 569 F. Supp. 2d 929, 937 (N.D. Cal. 2008); *Films of Distinction v. Allegro Film Prods., Inc.*,

3    12 F. Supp. 2d 1068, 1081 n.8 (C.D. Cal. 1998) ("In the Ninth Circuit, a product defamation or

4    trade libel claim must be based on specific statements, and '[t]he defamatory character of the

5    language must be apparent from the words themselves.'" (quoting *Auvil v. CBS "60 Minutes"*, 67

6    F.3d 816, 822 (9th Cir. 1995)).  "[A] cause of action for damages for trade libel requires pleading

7    and proof of special damages in the form of pecuniary loss."  *See Leonardini v. Shell Oil Co.*, 216

8    Cal. App. 3d 547, 572 (1989) (citation omitted).  The plaintiff must "identify particular customers

9    and transactions of which it was deprived as a result of the libel."  *Mann v. Quality Old Time*

10   *Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004).

11          Contrary to defendants' contentions, plaintiff's Second Amended Complaint does specify

12   who made the allegedly disparaging remarks, to whom, and when.  Plaintiff alleges that

13   defendants Hunter and RBD, through phone calls, visits and emails, made disparaging statements

14   about NPK to NPK's customers and business partners, several of whom NPK identifies by name.

15   SAC ¶¶ 21-23.  Plaintiff alleges that these activities took place beginning in July 2013 and

16   November 2013.  *Id.*  Thus, defendants' motion fails on these grounds.

17          However, plaintiff has failed to plead special damages as required.  *See Leonardini*, 216

18   Cal. App. 3d at 572.  Plaintiff states that "NPK has suffered special damages and/or pecuniary

19   harm" but does not identify any "particular customers [or] transactions of which it was deprived"

20   due to defendants' conduct.  *See* SAC ¶ 52; *Mann*, 120 Cal. App. 4th at 109.  Accordingly,

21   defendants' motion to dismiss the claim for trade libel is granted with leave to amend.

22

23          **E.      Joint Liability and Civil Conspiracy**

24          Plaintiff's seventh claim is for "joint liability – aiding and abetting."  Joint liability is a

25   theory of liability, not a distinct cause of action under California law.  *Scott v. JPMorgan Chase*

26   *Bank, N.A.*, 214 Cal. App. 4th 743, 762 (2013).  Accordingly, this claim is dismissed with

27   prejudice.

28          Plaintiff's eighth cause of action for "civil conspiracy" is similarly deficient.  "Under

California law, there is no separate and distinct tort cause of action for civil conspiracy." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1228 (9th Cir. 1997). "The major significance of [a] conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 508 (1980).

Plaintiff's claim for conspiracy survives only to the extent that plaintiff successfully alleges an underlying wrongful act. Plaintiff must specify which alleged torts are the predicate offenses for its conspiracy claim. It must also allege specific facts about how each defendant conspired to commit the allegedly wrongful acts. Accordingly, plaintiff's claim for conspiracy is dismissed with leave to amend.

### F.   CBD Guild Dismissal

Defendants make a final attempt at dismissal by stating that "[t]he Second Amended Complaint contains no substantive claims against Defendant CBD Guild." *See* Motion at 13. However, plaintiff has alleged that CBD "promised Lilga employment and other benefits and incentives to leave NPK and take its top secret, valuable commercial information," and that CBD intentionally interfered with plaintiff's prospective economic advantage. *See* SAC ¶¶ 16, 41-47. Defendants have not specified which claims fail as to CBD and have cited no authority in support of their argument. Defendants' motion to dismiss CBD is denied.

### III.   Defendants' Request for Judicial Notice

With its motion, defendants filed a request seeking judicial notice of the following documents from *Yeti Enterprises Inc. v. NPK, LLC*, No. 3:13-cv-01203-ST ("*Yeti*"): (1) Third Amended Complaint; (2) Findings and Recommendations; (3) Defendants' Answer to Plaintiffs' Third Amended Complaint and Counterclaims; and (4) United States District Court of Oregon Civil Docket for *Yeti*. Dkt. No. 41.

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is

not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  While "a court may take judicial notice of the existence of matters of public record, such as a prior order or decision," it should not, however, take notice of "the truth of the facts cited therein."  *Marsh v. San Diego Cnty.,* 432 F. Supp. 2d 1035, 1043 (S.D. Cal. 2006) (citations omitted).  "[T]aking judicial notice of findings of fact from another case exceeds the limits of Rule 201."  *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014); *see also M/V Am. Queen v. San Diego Marine Constr. Corp.,* 708 F.2d 1483, 1491 (9th Cir. 1983) ("[A] court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it").

All of the *Yeti* documents that defendants submit are available to the public and are certified and maintained by an official office.  Thus, their accuracy cannot be reasonably disputed.  Accordingly, the Court grants defendants' request for judicial notice insofar as defendants ask the Court to recognize that NPK is currently a party to litigation in the District of Oregon.  However, the Court denies the request to the extent that it asks this Court to take notice of the truth of the facts asserted therein.[4]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion to strike in its entirety.  The Court GRANTS defendants' motion to dismiss, with leave to amend, the claims for trade libel and civil conspiracy.  The Court GRANTS with prejudice defendants' motion to dismiss the claim for joint liability.  In all other respects, defendants' motion to dismiss is DENIED.

---

[4] In its reply, defendants cite to *Andrews v. Metro N.C.R. Co.*, 882  F.2d 705, 707 (2d Cir. 1989), for the proposition that NPK's pleadings in *Yeti* are deemed admissions here.  Reply at 1. *Andrews*, however, involved admissions based on prior pleadings in the same action.  *Andrews*, 882 F.2d at 707.  Here, the pleadings submitted for judicial notice are from a different case. Therefore, *Andrews* is not applicable.

1    **<u>Any amended complaint shall be filed no later than October 2, 2015.</u>**

2

3        **IT IS SO ORDERED**.

4    Dated:  September 16, 2015

5

6                                                        SUSAN ILLSTON
                                                         United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California